R. B. Cowden v. Commissioner. Barbara Faye Cowden v. Commissioner.Cowden v. CommissionerDocket Nos. 23246, 23247.United States Tax Court1950 Tax Ct. Memo LEXIS 19; 9 T.C.M. (CCH) 1148; T.C.M. (RIA) 50304; December 8, 1950*19 Harry C. Weeks, Esq., 909-913 Sinclair Bldg., Fort Worth 2, Tex.; and Frank B Appleman, Esq., for the petitioners. John W. Alexander, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion These proceedings, consolidated for hearing and opinion, involve income tax deficiencies and penalties for 1946 and 1947, as follows: NegligenceYearDeficiencyPenaltyDocket No. 232461946$10,088.80$504.44194724,725.75Docket No. 23247194610,136.30506.82194724,725.75 Of the several issues raised by the pleadings only two remain for determination. They are whether the gains realized by the petitioners upon sales in 1946 and 1947 of advance royalty or bonus payment contracts received by them upon the execution of oil and gas leases on their lands are taxable to them as ordinary income in the year of the execution of the lease or as long-term capital gains, and whether the petitioners are entitled to an allowance for depreciation of an airplane in 1947. All other issues were disposed of by oral stipulation at the hearing, except the 5 per cent penalty for negligence asserted by respondent which petitioners*20 do not contest. Findings of Fact The petitioners are husband and wife residing in Midland, Texas. They keep their books and records and file their income tax returns on the cash basis of accounting by calendar years. All of their income for the taxable years here involved was community income and was reported by the petitioners on separate returns filed with the collector of internal revenue for the second district of Texas. The petitioners were married in 1924 and have resided continuously in or near Midland since that time. They acquired ranch lands in Andrews, Winkler, and Ector Counties, Texas, in 1929 and 1934, and have owned these lands continuously since that time. Prior to 1945 the petitioners had executed oil and gas leases on various tracts of their ranch lands which were due to expire in 1946. Representatives of several oil companies approached R. B. Cowden, hereinafter referred to individually as the petitioner, for the purpose of securing oil and gas leases on the petitioners' lands. During 1946 the petitioners executed various individual oil and gas leases on portions of their ranch lands with Stanolind, Magnolia, Shell, Plymouth, and Humble oil companies. The*21 leases were ordinary commercial oil and gas leases of a form commonly used in Texas known as "Producers 88 Rev." leases. Each lease provided for the payment of a royalty, an oil payment, and an advance royalty or bonus to the petitioners as land owners. The advance royalty or bonus to be paid to the petitioners in connection with each lease was only nominally recited in the lease itself but was set forth exactly in a separate agreement executed by the petitioners and the lessee contemporaneously with the lease. Each advance royalty agreement provided for the payment of a small part of the advance in cash on execution of the lease and for unconditional payment of the balance in one or more deferred payments on specific future dates. After the oil and gas leases were executed and delivered by the petitioners to the lessees and the advance royalty or bonus agreements were executed by the petitioners and the lessees and delivered to the petitioners, the petitioners sold and assigned the advance royalty or bonus agreements without recourse either to the First National Bank of Midland, Midland, Texas, or to the First National Bank of Fort Worth, Texas. The assignments all contain substantially*22 the same provisions. A typical assignment provided in part as follows: "THAT WE, R. B. Cowden and wife, Barbara Faye Cowden, Lessor in a certain oil, gas and mineral lease executed by us to [oil company] * * *and payees in a certain contract or agreement entered into by and between us and [oil company] * * * whereby the said [oil company] * * * is unconditionally to pay to the said R. B. Cowden and wife, Barbara Faye Cowden, on account of deferred bonus for said lease * * * for a sufficient and valuable consideration to us in hand paid by [bank] * * * have SOLD and ASSIGNED and do by these presents hereby SELL and ASSIGN unto the said [bank] * * * all of our interest in the above mentioned contract and all of our right and title to collect and receive * * * said sum * * * as evidenced by said contract, but it is understood and agreed that this assignment is without recourse upon us in any event." The names of the lessees, face amounts of the advance royalty or bonus agreements, the dates of execution, the dates of transfer, and the amounts received by the petitioners from the purchasing banks are as follows: AmountFace AmountDate ofDate ofReceivedLesseeof AgreementExecutionTransferby PetitionersHumble Oil & Refining Company$105,450.0012- 5-463-20-47$103,587.05Shell Oil Company2,760.877-12-467-13-465,320.642,760.87Shell Oil Company5,400.007-12-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,420.205,400.00Shell Oil Company5,700.007-12-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,980.105,700.00Magnolia Petroleum Company2,815.827-12-467-13-465,412.742,815.82Stanolind Oil & Gas Company1,100.667-25-462-25-472,158.921,100.66Stanolind Oil & Gas Company1,510.227-25-462-25-472,968.481,510.22Stanolind Oil & Gas Company2,815.787-25-462-25-475,523.632,815.78Plymouth Oil Company21,387.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-25-4620,992.3521,387.508- 7-4720,886.50Plymouth Oil Company42,775.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-25-4641,983.65Plymouth Oil Company13,114.757-16-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,960.6513,114.758- 7-4712,737.75Plymouth Oil Company12,587.507-16-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,439.6012,587.5012,243.50*23 The petitioners reported the proceeds of the sales in their income tax returns for 1946 as the proceeds from the sales of capital assets held for more than six months. The respondent determined in his notice of deficiency that "The deferred payments on oil and gas lease bonuses are considered taxable income in the year property was leased. The amount of income is the value of the deferred payments measured in this case by the proceeds from discounting the deferred payment contracts. * * *" On August 28, 1947, the petitioner bought an airplane at a cost of $8,072.75. He kept the airplane during the rest of the year and used it for both business and pleasure. The petitioner kept no actual record during 1947 of the use of the plane for business but estimated that he used it in his business about 73 per cent of the time. He also estimated the useful life of the airplane to be from three to five years. The petitioners did not deduct any depreciation for the airplane in their tax returns for 1947, but claimed in their petitions an allowance for depreciation on the airplane based upon a 50 per cent use for business and a useful life of five years. Opinion LE MIRE, Judge: The principal*24 issue in these proceedings is whether gains derived by the petitioners from sales in 1946 and 1947 of advance royalty or bonus payment contracts received by them upon the execution of oil and gas leases on their lands are taxable to them as long-term capital gains. The respondent has determined that the proceeds of the sales are taxable to the petitioners as ordinary income. The petitioners contend that they are taxable as long-term capital gains. They contend that this case is on all fours with and is controlled by the cases of , and . Having thoroughly considered all of the facts in this case in the light of what we said in the two Kleberg cases, as well as in other pertinent cases, we think that the petitioners are correct and that the respondent erred in treating the proceeds of the advance royalty or bonus contract sales as ordinary income to the petitioners. The petitioners here executed several similar oil and gas leases on their land to oil companies during 1946 and 1947, in each lease reserving the customary lessor's royalty and an oil payment from production, and*25 received upon execution of the lease a contract for payment of an advance royalty or bonus. Each contract provided for the immediate payment of a portion of the advance royalty or bonus and for additional payments at stated dates in later years. Although the contracts contained unconditional promises to pay fixed amounts on fixed dates, no notes, bonds, or other evidences of indebtedness than the contracts themselves were given. On similar facts we hold in the first Kleberg case, supra, that the contracts had no fair market value when received and that the amounts of the deferred payments should not be included in income until they were received. See also , dismissed, , and the cases reviewed therein, and the recent case of . We so hold here. It is well settled in Texas that oil and gas in place are a part of the realty susceptible of ownership and may be conveyed as any other interest in realty by appropriate conveyance. ; ,*26 on rehearing, ; ; . What the petitioners did was to sell portions of their realty to various oil companies by means of oil and gas leases, receiving therefor the right to receive future payments in addition to the payments received upon execution of the leases. All of the elements of a sale were present, and we held that the rights to receive future payments from the oil companies were a part of the proceeds of the petitioners' sales of their realty. The sales by the petitioners to certain banks of their contractual rights to receive future payments of advance royalty or bonus for the leases did not create any new interest in the minerals in the petitioners. They merely changed the form in which the proceeds from the sales of the original mineral interests, less the reserved royalty and oil payments, were to be received. . The petitioners simply sold their rights to collect future payments for the minerals for a cash price determined by bargaining with the purchasing banks. The cash received from the*27 banks was the consideration for the sale of capital assets, having a holding period dating from the time the petitioners originally acquired the mineral interests as part of their lands. . The proceeds of the sales to the banks are taxable as long-term capital gains to the petitioners when received. At the hearing and upon brief the respondent made much of evidence that the petitioners sought and received legal advice in advance for the purpose of minimizing the tax consequences incident to the anticipated realization of income from oil and gas leases in the taxable years here involved, and that they followed the advice which they received carefully in the conduct of the transactions here involved. We have made no findings of fact based upon this evidence since we consider it to be immaterial to the issues presented. There is no evidence that these transactions were unreal in any respect. The petitioners have a right, which may not be doubted, to decrease the amount of what might otherwise be their taxes, by whatever means the law permits. . As to the deductions claimed by the petitioners*28 in 1947 for depreciation on an airplane, the evidence is that the airplane was bought in August 1947 at a cost of $8,072.75, and used throughout the rest of the year for both business and pleasure. The petitioner estimated that he used the airplane to the extent of 73 per cent for business but claimed depreciation based upon 50 per cent use for business. He also estimated the useful life of the airplane to be from three to five years but claimed depreciation based upon a useful life of five years. We do not have sufficient evidence to make a precise determination of the allowance for depreciation to which the petitioners are entitled, but after consideration of all the available evidence bearing upon the issue we think the allowance claimed by the petitioners was reasonable and must be allowed. . Decisions will be entered under Rule 50.